# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# FORT WAYNE DIVISION

| | | |
|---|---|---|
| CARLA JEAN MIRACLE,          | ) | |
|     Plaintiff, | ) | |
| | ) | |
| v.                            | ) | CAUSE NO.: 1:17-CV-480-PRC |
| | ) | |
| NANCY A. BERRYHILL,           | ) | |
| Acting Commissioner of the    | ) | |
| Social Security Administration, | ) | |
|     Defendant. | ) | |

## OPINION AND ORDER

This matter is before the Court on a Complaint [DE 1], filed by Plaintiff Carla Jean Miracle on November 20, 2017, and Plaintiff's Opening Brief [DE 20], filed on June 4, 2018. Plaintiff requests that the January 3, 2017 decision of the Administrative Law Judge denying her claim for disability insurance benefits be reversed and remanded for further proceedings. On August 8, 2018, the Commissioner filed a response. Plaintiff has not filed a reply. For the following reasons, the Court denies Plaintiff's request for remand.

## PROCEDURAL BACKGROUND

On July 23, 2014, Plaintiff filed an application for disability insurance benefits alleging disability beginning January 1, 1999. The onset date of disability has since been amended to April 1, 2004. The application was denied initially and on reconsideration. Plaintiff requested a hearing, and, on July 20, 2016, Administrative Law Judge Stephanie Katich ("ALJ") held a hearing. In attendance at the hearing were Plaintiff, Plaintiff's non-attorney representative, and an impartial vocational expert. On January 3, 2017, the ALJ issued an unfavorable decision, making the following findings:

    1.    The claimant last met the insured status requirements of the Social Security Act on March 31, 2005.

    2.      The claimant did not engage in substantial gainful activity during the period from her amended alleged onset date of January 1, 1999 [*sic*] through her date last insured of March 31, 2005.

    3.      Through the date last insured, the claimant had the following medically determinable impairments: depression and gestational diabetes.

    4.      Through the date last insured, the claimant did not have an impairment or combination of impairments that significantly limited the ability to perform basic work-related activities for 12 consecutive months; therefore, the claimant did not have a severe impairment or combination of impairments.

    5.      The claimant was not under a disability, as defined in the Social Security Act, at any time from the amended alleged onset date[ ] through March 31, 2005, the date last insured.

(AR 18-22).

The Appeals Council denied Plaintiff's request for review, leaving the ALJ's decision the final decision of the Commissioner. *See* 20 C.F.R. § 404.981. Plaintiff filed this civil action pursuant to 42 U.S.C. §§ 405(g) and 1383(c) for review of the Agency's decision.

The parties filed forms of consent to have this case assigned to a United States Magistrate Judge to conduct all further proceedings and to order the entry of a final judgment in this case. Therefore, this Court has jurisdiction to decide this case pursuant to 28 U.S.C. § 636(c) and 42 U.S.C. § 405(g).

## STANDARD OF REVIEW

The Social Security Act authorizes judicial review of the final decision of the agency and indicates that the Commissioner's factual findings must be accepted as conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Thus, a court reviewing the findings of an ALJ will reverse only if the findings are not supported by substantial evidence or if the ALJ has applied an erroneous legal standard. *See Briscoe v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005). Substantial evidence

consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (quoting *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003)).

A court reviews the entire administrative record but does not reconsider facts, re-weigh the evidence, resolve conflicts in evidence, or substitute its judgment for that of the ALJ. *See Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005); *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000); *Butera v. Apfel*, 173 F.3d 1049, 1055 (7th Cir. 1999). Thus, the question upon judicial review of an ALJ's finding that a claimant is not disabled within the meaning of the Social Security Act is not whether the claimant is, in fact, disabled, but whether the ALJ "uses the correct legal standards and the decision is supported by substantial evidence." *Roddy v. Astrue*, 705 F.3d 631, 636 (7th Cir. 2013) (citing *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 618 (7th Cir. 2010); *Prochaska v. Barnhart*, 454 F.3d 731, 734-35 (7th Cir. 2006); *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004)). "[I]f the Commissioner commits an error of law," the Court may reverse the decision "without regard to the volume of evidence in support of the factual findings." *White v. Apfel*, 167 F.3d 369, 373 (7th Cir. 1999) (citing *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997)).

At a minimum, an ALJ must articulate her analysis of the evidence in order to allow the reviewing court to trace the path of her reasoning and to be assured that the ALJ considered the important evidence. *See Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002); *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995); *Green v. Shalala*, 51 F.3d 96, 101 (7th Cir. 1995). An ALJ must "'build an accurate and logical bridge from the evidence to [the] conclusion' so that [a reviewing court] may assess the validity of the agency's final decision and afford [a claimant] meaningful review." *Giles v. Astrue*, 483 F.3d 483, 487 (7th Cir. 2007) (quoting *Scott*, 297 F.3d at 595)); *see*

*also O'Connor-Spinner*, 627 F.3d at 618 ("An ALJ need not specifically address every piece of evidence, but must provide a 'logical bridge' between the evidence and [her] conclusions."); *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001) ("[T]he ALJ's analysis must provide some glimpse into the reasoning behind [the] decision to deny benefits.").

## DISABILITY STANDARD

To be eligible for disability benefits, a claimant must establish that she suffers from a "disability" as defined by the Social Security Act and regulations. The Act defines "disability" as an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 423(d)(1)(A). To be found disabled, the claimant's impairment must not only prevent her from doing her previous work, but considering her age, education, and work experience, it must also prevent her from engaging in any other type of substantial gainful activity that exists in significant numbers in the economy. 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1520(e)-(f).

When a claimant alleges a disability, Social Security regulations provide a five-step inquiry to evaluate whether the claimant is entitled to benefits. 20 C.F.R. § 404.1520(a)(4). The steps are: (1) Is the claimant engaged in substantial gainful activity? If yes, the claimant is not disabled, and the claim is denied; if no, the inquiry proceeds to step two; (2) Does the claimant have an impairment or combination of impairments that are severe? If no, the claimant is not disabled, and the claim is denied; if yes, the inquiry proceeds to step three; (3) Do(es) the impairment(s) meet or equal a listed impairment in the appendix to the regulations? If yes, the claimant is automatically considered disabled; if no, then the inquiry proceeds to step four; (4) Can the claimant do the

4

claimant's past relevant work? If yes, the claimant is not disabled, and the claim is denied; if no, then the inquiry proceeds to step five; (5) Can the claimant perform other work given the claimant's residual functional capacity (RFC), age, education, and experience? If yes, then the claimant is not disabled, and the claim is denied; if no, the claimant is disabled. 20 C.F.R. § 404.1520(a)(4)(i)-(v); *see also Scheck v. Barnhart*, 357 F.3d 697, 699-700 (7th Cir. 2004). The claimant bears the burden of proving steps one through four, whereas the burden at step five is on the ALJ. *Zurawski*, 245 F.3d at 885-86; *see also Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995).

**ANALYSIS**

In this appeal, Plaintiff argues that the ALJ erred by not assigning controlling weight to two letters authored by Dr. Kelly Kasper, Plaintiff's treating physician.

Under the "treating physician rule," which is found in the version of the regulations that apply to Plaintiff's claim, the opinion of a treating physician on the nature and severity of an impairment is given controlling weight if it "is well-supported by medically acceptable clinical and laboratory techniques and is not inconsistent with the other substantial evidence in [the] case record."[1] *Jelinek v. Astrue*, 662 F.3d 805, 811 (7th Cir. 2011); 20 C.F.R. § 404.1527(c)(2) (applicable to claims filed before March 27, 2017). "An ALJ must offer good reasons for discounting the opinion of a treating physician." *Israel v. Colvin*, 840 F.3d 432, 437 (7th Cir. 2016) (citing *Moore v. Colvin*, 743 F.3d 1118, 1127 (7th Cir. 2014)). When an ALJ does not give

---

[1]Plaintiff reports the standard as "'well-supported' and 'not inconsistent with the other substantial evidence' in the record." (Opening Br. 12, ECF No. 20). However, all of the authorities that Plaintiff cited in support of this statement require the opinions to be "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and not merely "well-supported." *See* 20 C.F.R. 404 § 404.1527(c)(2); *Punzio v. Astrue*, 630 F.3d 704, 710 (7th Cir. 2011); *Campbell v. Astrue*, 627 F.3d 299, 306 (7th Cir. 2010). Counsel is advised to remember the duty to not "knowingly misrepresent, mischaracterize, misquote, or miscite facts or authorities in any oral or written communication to the court." *Standards for Professional Conduct Within the Seventh Federal Judicial Circuit*, Lawyers' Duty to the Court 5, *available at* http://www.ca7.uscourts.gov/rules-procedures/rules/rules.htm (last updated May 24, 2018).

controlling weight to the opinion of a treating physician, she must weigh the opinion in accordance with the factors in 20 C.F.R. § 404.1527. *See* 20 C.F.R. § 404.1527(c)(2) ("When we do not give the treating source's opinion controlling weight, we apply the factors listed in paragraphs (c)(2)(i) and (c)(2)(ii) of this section, as well as the factors in paragraphs (c)(3) through (c)(6) of this section in determining the weight to give the opinion."); *Scrogham v. Colvin*, 765 F.3d 685, 697-98 (7th Cir. 2014); *Bauer v. Astrue*, 532 F.3d 606, 608 (7th Cir. 2006).

The two letters from Dr. Kasper are found at Exhibits 10F and 11F of the administrative record. In the first letter, dated August 9, 2016, and found at Exhibit 10F, Dr. Kasper reports as follows:

> Carla Miracle is being evaluated for her physical and mental functional capacity. I have known Ms. Miracle personally since the early 2000's. I have treated Ms. Miracle since the mid-2000's. Ms. Miracle has had an extensive and complicated medical and psychiatric history. Her last pregnancy was high-risk during which time she was treated for preterm labor and placed on bed rest. She was unable to work during this pregnancy. Subsequently, she underwent urethral sling placement for genuine stress urinary incontinence. Initially, she did well showing improvement in her urinary symptoms. However, she began having issues with vulvar pain and bladder pain. Her symptoms worsened until my office referred her to an Urologist. She has seen two Urologists and had multiple procedures on her bladder. She has received minimal relief from her pain and bladder symptoms during this time. Currently, she requires significant pain medication to be able to function at a minimal capacity. She has lost significant physical functional capacity. Her mental functional capacity has been decreased by both the pain medication side effects and depression from her chronic medical condition. Her physical and mental conditions have prevented Ms. Miracle from being able to work for many years.

(AR 335). In the letter dated August 12, 2016, found at Exhibit 11F, Dr. Kaspar further reports:

> I am writing on behalf of Carla Miracle in regards to her ability to function during the time frame from October 2004 through present day.
>
> Carla gave birth to her third child, [name redacted], after a high-risk pregnancy. [Her child] was born prematurely and required constant care for the first 6 months of his life. The constant attention which [her child] required would not leave time for a job. In addition, Carla suffered from severe exhaustion due to the 24-hour round the clock

6

care which she provided [her child]. Carla's health was also complicated by postpartum depression, urinary incontinence, recurrent urinary tract infections and chronic pelvic pain. While any one of these conditions could affect a woman's ability to function and hold down gainful employment, the combination of them would make it extremely unlikely. Carla continued to suffer for the next several years from multiple conditions affecting her ability to function. These conditions included chronic pelvic pain, heavy painful menses, stress urinary incontinence and severe hormonal fluctuations affecting her emotional stability. Carla ultimately underwent a hysterectomy with sling procedure in 2006 to address several of these issues in the hopes of regaining some of her ability to function. Unfortunately, Carla continued to have issues with worsening pelvic pain with the addition of painful urination. Carla was ultimately diagnosed with a severe case of interstitial cystitis for which she has undergone multiple treatments and therapies to try to alleviate the disabling pain from which she suffers. Carla continues to require pain medication to perform simple activities of daily living. She is exploring surgical options in the hopes that she can alleviate her pain.

(AR 336).

The ALJ assigned "no weight" to these letters. The ALJ provided multiple reasons for this decision. The ALJ found that Dr. Kaspar's statement that Plaintiff's child required constant attention did not leave time for a job was not suggestive of a severe, medically determinable impairment. The "severe exhaustion" reported by Dr. Kaspar was not documented longitudinally in the medical evidence. Similarly, the postpartum depression, urinary incontinence, recurrent urinary tract infections and chronic pelvic pain mentioned in Dr. Kaspar's reports were not supported by reference to any treatment records documenting these conditions at the time they occurred. Similarly, Dr. Kaspar's opinion that the combination of the above conditions would make it "extremely unlikely" for any woman to be able to maintain gainful employment is both conclusory and unsubstantiated by documentation contemporaneous with the occurrence of treatment or documented prior to the date last insured.

The ALJ further noted that Dr. Kasper does not reveal when she began treating Plaintiff other than "the mid-2000's." Both letters lack specific dates in their narrative reports of Plaintiff's medical

history. Plaintiff's current functioning (as of the August 12, 2016 letter) is too remote in time to substantiate Plaintiff's condition as of her date last insured, March 31, 2005, and Dr. Kasper did not substantiate any of her statements with medical evidence.

Plaintiff argues that her own testimony and the medical history were consistent with Dr. Kasper's opinion. Specifically, Plaintiff asserts that her testimony of chronic bladder pain on pages 34-35 and 44-46 of the administrative record is consistent with Dr. Kaspar's opinion. First, Plaintiff's testimony is not a medically acceptable clinical or laboratory technique. Second, Plaintiff did not testify on pages 34 and 35 that her pain predates her date last insured. At one point, the ALJ asked her for a date for the matters to which she was testifying, and Plaintiff responded "This was a couple of years in May." (AR 35). On pages 44 through 46, Plaintiff's representative asked Plaintiff if she was "depressed, in a lot of pain. Were you having trouble with urinating at that time?" to which Plaintiff answered, "Yes, yes." (AR 44). Over the next pages, Plaintiff testifies to incontinence, but she does not describe bladder pain of any type or make any clarifying statements regarding the "lot of pain" noted above.

Though Plaintiff does not identify what in her medical history supports Dr. Kasper's opinion, earlier in the brief Plaintiff identifies her severe impairments as recurrent urinary infections, incontinence, chronic pelvic pain, severe hormonal fluctuations that affected emotional stability, complications from pelvic mesh implantation, interstitial cystitis, gestational diabetes, benign hepatic parenchymal cyst and hemangioma, bipolar disorder, depression, and anxiety. Most of the evidence that Plaintiff cites to support each identified impairment comes from Dr. Kasper's reports, Plaintiff's testimony, information Plaintiff reported in her Disability Report to the Social Security Administration, or medical records that postdate her date last insured by multiple years.

The exceptions are as follows. The evidence supporting Plaintiff's gestational diabetes is from 2004, Plaintiff was prescribed Ketorolac and Hydrocodone in the years immediately prior to her alleged onset date, and Plaintiff was prescribed Prozac and Zoloft from 2001 through 2003. The ALJ addressed Plaintiff's gestational diabetes in her decision and Plaintiff raises no objection to the ALJ's analysis on this matter. Plaintiff cites to her prescriptions for Ketorolac and Hydrocodone in support of a chronic pelvic pain impairment but does not identify any record showing that these prescriptions are for chronic pelvic pain. Regarding the Prozac and Zoloft prescriptions, the ALJ addressed Plaintiff's depression in her decision, and Plaintiff does not raise any objection to that discussion.

The standard for determining whether a treating physician's opinion should receive controlling weight is whether it "is well-supported by medically acceptable clinical and laboratory techniques and is not inconsistent with the other substantial evidence in [the] case record." *Jelinek*, 662 F.3d at 811; 20 C.F.R. § 404.1527(c)(2). The ALJ found that neither of Dr. Kasper's letters were supported by medical records. Plaintiff, who bears the burden at this stage of the disability analysis, has not identified any medical records which support Dr. Kasper's opinions, despite Plaintiff's general reference to her medical history as supporting the opinions. Thus, the ALJ has provided good reasons to not afford controlling weight to Dr. Kasper's opinions in Exhibits 10F and 11F, and the ALJ did not err by not assigning controlling weight.

Plaintiff does not specifically assert that, even if the ALJ's denial of controlling weight was not in error, the assignment of "no weight" was unwarranted. However, Plaintiff does argue that, given Dr. Kasper's specialty and long treatment history with Plaintiff, Dr. Kasper should have received controlling weight. Specialty and treatment history are part of the analysis once controlling

9

weight is denied, so, even though Plaintiff has not raised the objection, the Court will address whether the ALJ was justified in affording no weight to the opinions.

The regulations provide that the following should be considered when assigning weight to medical opinions: length of the treatment relationship and the frequency of examination, nature and extent of the treatment relationship, supportability, consistency, specialization, and "other factors." 20 C.F.R. § 404.1527(c)(2)-(6). Though Plaintiff claims a long treating relationship with Dr. Kasper, most, if not all, of that relationship occurred after the date last insured, as treatment began in the mid-2000's. As the ALJ identified, the reports do not describe Plaintiff's course of treatment with any specificity. Plaintiff identifies Dr. Kasper as an obstetrical and gynecological specialist. Even so, the lack of medical records supporting Dr. Kasper's opinions and the sparse evidence that Plaintiff identifies as consistent with these opinions leads the Court to conclude, even if Plaintiff had raised the argument that Dr. Kasper's opinions (after not being given controlling weight) deserved greater than "no" weight, that Plaintiff would not prevail in showing that the ALJ erred.

## CONCLUSION

Based on the foregoing, the Court hereby **DENIES** the relief sought in Plaintiff's Opening Brief [DE 20]. The Court **DIRECTS** the Clerk of Court to **ENTER JUDGMENT** in favor of Defendant and against Plaintiff.

So ORDERED this 28th day of September, 2018.

s/ Paul R. Cherry<br>
MAGISTRATE JUDGE PAUL R. CHERRY<br>
UNITED STATES DISTRICT COURT